

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CAREY J. GARDNER,

             Plaintiff,

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

             Defendant.

Civil No. 08-145-AC

FINDINGS AND
RECOMMENDATION

---

ACOSTA, Magistrate Judge:

Plaintiff Carey Gardner ("Gardner") seeks judicial review of the Social Security Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). This court has jurisdiction under 42 U.S.C. § 405(g).

1 - FINDINGS AND RECOMMENDATION

For the reasons below the Commissioner's decision should be AFFIRMED.

## BACKGROUND

Born in 1953 (Tr. 83[1]), Gardner has a bachelor's degree. Tr. 107. Gardner reports work as a police officer between 1986 and January 29, 1999. Tr. 114.

Gardner alleges disability since January 29, 1999 (Tr. 83), due to depression and anxiety. Tr. 101. After a hearing held on September 14, 2006 (Tr. 645-85), an ALJ found Gardner not disabled on September 25, 2006. Tr. 14-22. The Appeals Council denied review of that decision. Tr. 5-8. Accordingly, the ALJ's decision is the Commissioner's final decision now before this court on Gardner's appeal.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987). Gardner challenges the ALJ's evaluation of the evidence and his conclusions at step five.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month duration requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed"

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on June 25, 2008. (Docket #12).

impairment in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If he determines the impairment meets or equals a listed impairment, the claimant is disabled. 20 C.F.R. § 404.1520(d).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. § 404.1520(e); Social Security Ruling ("SSR") 96-8p. The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. § 404.1520(a)(4)(iv).

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden of production shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566; 404.1520(g).

## THE ALJ'S FINDINGS

The ALJ found that Gardner was not performing substantial gainful activity at step one in the sequential proceedings. Tr. 16. At step two, the ALJ found that Gardner had a combination of impairments which satisfied the regulatory definition of "severe" for the purposes of step two of the sequential analysis. Gardner's severe impairments include an affective disorder and an anxiety

disorder. Tr. 16. At step three, the ALJ found that Gardner's impairments did not meet or equal a listed impairment. Tr. 17.

The ALJ evaluated Gardner's RFC: "the claimant had the residual functional capacity to perform all levels of physically demanding work, but is limited to work which is simple, repetitive, and routine in a defined work structure and is not in a public setting." Tr. 18. At step four, the ALJ found that Gardner could not perform his past relevant work. Tr. 21. However, the ALJ found that Gardner could perform work existing in the national economy at step five in the sequential proceedings. Tr. 21-22. The ALJ therefore found Gardner not disabled throughout the period in question. Tr. 22.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson* v. *Comm'r of the Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Robbins* v. *Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tylitzki* v. *Shalala,* 999 F.2d 1411, 1413 (9th Cir. 1993).

The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins,* 466 F.3d at 882; *Edlund* v. *Massinari,* 253 F.3d 1152, 1156 (9th Cir. 2001). Thus, where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld, even where the evidence can support either affirming or reversing the ALJ's conclusion. *Burch* v. *Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). The ALJ is responsible for determining

credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883, *citing* SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. § 404.1 545(a)(3); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996). However, the reviewing court must consider the entire record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

An ALJ must generally accord greater weight to a treating physician's opinion than an examining physician's opinion and, in turn, accord greater weight to an examining physician's opinion than to a reviewing physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must give specific, legitimate reasons supported by substantial evidence for rejecting a controverted opinion from a treating or examining physician. *Id.* If the opinion is not contradicted by another physician, then the ALJ may reject it only for clear and convincing reasons. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002). An ALJ may reject portions of a physician's opinion predicated upon reports of a claimant deemed not credible. *Tonapetyan v. Halter*, 80 F.3d 1148, 1149 (9th Cir. 2002).

## DISCUSSION

Gardner contends the Commissioner failed to accurately assess his RFC because the ALJ improperly evaluated his testimony, the medical evidence, and the testimony of a lay witness. Gardner subsequently asserts that the ALJ erroneously found him able to perform work in the

national economy at step five in the sequential proceedings.

## I.     Gardner's Credibility

Gardner asserts that crediting his testimony establishes that he is disabled at step five in the sequential proceedings and concurrently entitled to benefits. Pl.'s Opening Br., 18. The Commissioner maintains that the ALJ's credibility finding was appropriate and that it should be affirmed. Def.'s Br. 6.

The ALJ found Gardner's symptom testimony not credible. Tr. 20. The ALJ based this finding upon Gardner's inconsistent statements regarding his alcohol use, Gardner's activities of daily living, the medical record, and the ALJ's belief that Gardner sought benefits for secondary gain. Tr. 18-21.

### A.     Standards: Credibility

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036 (citing *Smolen,* 80 F.3d at 1281). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan,* 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen,* 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* Once

a claimant shows an underlying impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

**B.    Analysis**

Gardner contends that the ALJ's finding is erroneous.  Gardner specifically challenges the ALJ's reference to his alcohol use, his activities of daily living, and his medical record regarding his anxiety.    Gardner also alleges that the ALJ's credibility analysis inappropriately considered secondary gain. Pl.'s Opening Br. 13-18.

**a.    Inconsistent Statements Regarding Alcohol Use**

The ALJ noted that Gardner made inconsistent statements regarding his alcohol use to treating psychiatrist Dr. Erickson.  The ALJ specifically discussed Gardner's testimony regarding his alcohol use and Gardner's failure to disclose this use to treating psychiatrist Dr. Erickson.  Tr. 18. Gardner contends that this assessment misconstrues his testimony because he "self-medicated" by drinking.  Pl.'s Opening Br. 13.

The ALJ's credibility findings may note a claimant's inconsistent statements. *Thomas*, 278 F.3d at 959. This standard specifically applies to inconsistent statements regarding substance abuse. *Id.*; *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (affirming ALJ's reasoning that inconsistent statements regarding alcohol use supported negative credibility finding).

A close reading of the record supports the ALJ's finding that Gardner inconsistently reported his alcohol use.  Gardner reported to Dr. Erickson that he drank socially twice week in June 2001 (Tr. 472), and "up to two beers/day," twice a week on September 12, 2001. Tr. 417.  Dr. Erickson last treated Gardner on December 12, 2001, and did not mention alcohol use or abuse at this time.

Tr. 470. Veteran's Administration ("VA") psychiatric records produced between December 5, 2001, and August 2006 show that Gardner received a diagnosis of alcohol abuse during this time. Tr. 415, 423-25, 431-32, 434-37, 439, 442, 446, 449, 517-18, 557, 600-01, 607, 610. The VA alcohol abuse diagnosis was based upon Gardner's reports of his drinking habits for the period between December 2001 and September 2005. *Id.* The ALJ's finding that Gardner did not disclose the extent of his alcohol use to Dr. Erickson, while disclosing significantly greater use to VA providers in December 2001 is based upon the record. No legal standard advises that a claimant may "self-medicate" with alcohol and, in any event, this contention does not change that Gardner withheld the extent of his drinking from Dr. Erickson. The ALJ's citations to Gardner's inconsistent reporting regarding his alcohol use should therefore be affirmed.

**b.    Activities of Daily Living.**

The ALJ credibility finding discussed Gardner's activities of daily living. The ALJ first cited Gardner's reports that he plays eighteen holes of golf three or four times weekly (Tr. 19) and at times played golf daily. Tr. 20. The ALJ also cited Gardner's social activities with friends, including golf, attending bars, and playing pool. *Id.* Finally, the ALJ noted Gardner's relationships with his wife and a subsequent girlfriend. *Id.* Gardner contends that these activities were conducted in a manner allowing for his alleged social anxiety, and that the ALJ therefore failed to consider the "context" of his activities. Pl.'s Opening Br. 14 (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

The ALJ may consider whether a claimant's daily activities are inconsistent with the claimant's alleged disability. *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may also consider whether a disease process has periods of remission and a claimant's attempts to perform activities during such periods; here the ALJ may consider the context of a claimant's

activities. *Reddick*, 157 F.3d at 722. However, the ALJ still considers whether a claimant's activities are inconsistent with claimed limitations. *Smolen*, 80 F.3d at 1283. While a claimant need not "vegetate in a dark room," *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987), the Ninth Circuit also holds that where "the evidence of [a claimant's] daily activities may also admit of an interpretation more favorable to [the claimant]," if the ALJ's interpretation was rational "[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Burch*, 400 F.3d at 680-81 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)).

The record shows that Gardner consistently reported his golf and social activities to medical providers throughout the period under review. Tr. 266, 472-73, 481, 514, 558, 562, 567, 597, 601. Gardner reported anxiety with some of these activities, but he did not report that his anxiety prevented him from completing these activities. Tr. 472-73, 481, 558, 562, 597, 601, 610. Thus, a rational reading of the record supports the ALJ's citation to Gardner's golf and social activities. In such circumstances, this court must defer to the ALJ's interpretation of a claimant's activities of daily living, and this reference is therefore affirmed.

However, the ALJ's citation to Gardner's "chatting-up women" activity is unsupported by the record. Tr. 19 (citing Ex. 13F/262, 18F/424). The ALJ first cited examining psychiatrist Dr. Essink's June 19, 2003, evaluation. Dr. Essink did not mention any social activity with women. Tr. 514. The ALJ's also cited VA discharge notes following a colonoscopy; this citation also does not mention "chatting up" women. Tr. 622. The ALJ's finding regarding Gardner's ability to "chat up" women in bars is not based upon the record and should be rejected.

The ALJ's remaining citations to Garner's daily activities, notably golf and social activities

with friends, are based upon the record, are appropriate, and should be sustained. The court may not second-guess such analysis, *Rollins*, 261 F.3d at 857, and should not now do so.

### c.    Medical Record

The ALJ noted Gardner's medical record in his credibility discussion. The ALJ specifically noted examining psychiatrist's Dr. Essink's report that Gardner endorsed agoraphobic symptoms, and found this report contradicted by Gardner's activities of daily living. Tr. 19. The ALJ also noted VA treatment records showing that Gardner's mood and functioning improved in response to prescribed medication. Tr. 19-20 (citing exhibit 18F/457 [Tr. 589]). Finally, the ALJ noted that Gardner "only occasionally" requires anxiety medication. Tr. 19 (citing exhibit 18F/490 [Tr. 556]).

The ALJ may not require medical evidence to corroborate the degree of symptom testimony the claimant proffers. *Lingenfelter*, 504 F.3d at 1036 (citing *Smolen*, 80 F.3d at 1282)). However, the ALJ may consider a claimant's medical record in conjunction with other credibility factors. *Smolen*, 80 F.3d at 1284. Here the ALJ may rely upon a physician observations, *id.*, and physician treatment plans, including prescribed medications. *Id.* at 1284 n.8 (citing SSR 88-13). The ALJ's reference to portions of the medical record which contradicted Gardner's reported activities and showed improvement in response to medication, in conjunction with other credibility factors, was therefore appropriate and should be affirmed.

### d.    Secondary Gain

Gardner submits, without legal citation, that his receipt of a worker's compensation settlement is not a convincing reason to reject his testimony. Pl.'s Opening Br. 17. The ALJ stated that "it is realistic to conclude that the claimant is not interested in working, as he noted earlier in

his PERS disability process, working would adversely effect his obtaining PERS disability benefits." Tr. 20. The ALJ then noted that Gardner contemplated working as a private detective in order to supplement his PERS disability income. *Id.* (citing exhibit 18F). An ALJ may not chastise a disability claimant for seeking benefits; the expectation of compensation is the purpose of a disability application. *Ratto v. v. Sec'y*, 839 F. Supp. 1415, 1428-29 (D. Or. 1993).

The ALJ's indicated citation points to VA chart notes encompassing eighty-four pages of the record before this court. Tr. 556-640. This court's review of the exhibit finds a February 12, 2006, chart note showing that Gardner reported PERS disability benefit income (Tr. 560), and a September, 11, 2003, chart note indicating that Gardner reported "thinking about trying to work again." Tr. 600. The ALJ's citation, though overly broad, is therefore based upon the record. However, Gardner's comments do not establish that his present application is motivated by secondary gain and, therefore, the court does not find the ALJ's inference that secondary gain is a "realistic conclusion" an appropriate one on this record.

The court additionally notes that the Commissioner does not directly address Gardner's secondary gain argument. Instead, the Commissioner asserts that the ALJ made a supportable malingering finding. Def.'s Br. 7. This court's review is constrained to reasons asserted by the ALJ. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (citing *SEC v. Chenery*, 332 U.S. 194, 196 (1947)). The ALJ made no malingering finding, and the Commissioner cannot now assert that examining psychiatrist Dr. Heck's report establishes a supportable malingering finding. This argument should be rejected.

In summary, the ALJ's secondary gain citations are based upon the record, but do not

establish that Gardner's present application is motivated by inappropriate secondary gain. The ALJ's inference that Gardner's application was motivated by secondary gain should therefore be rejected.

### C.    Conclusion: Gardner's Credibility

This court must affirm an ALJ's credibility decision if it is appropriately based upon substantial evidence. *Rollins*, 261 F.3d at 857. While the ALJ made unsupported findings regarding Gardner's casual social interaction with women and his alleged secondary-gain motivation in seeking benefits, the ALJ's remaining credibility findings are based upon substantial evidence in the record and appropriate legal standards. This court may affirm an ALJ's overall credibility finding even if some of the ALJ's reasons are not upheld. *Batson*, 359 F.3d at 1197. Therefore, the ALJ's credibility decision should be affirmed.

## II.    Step Two Analysis

Gardner submits that the ALJ failed to find his attention-deficit hyper activity disorder ("ADHD") severe at step two in the sequential proceedings. Pl.'s Opening Br. 19. Gardner presently asserts this disorder is a "severe" impairment (Pl.'s Opening Br. 19-20), but the ALJ did not address this disorder or Gardner's contention in his decision.

At step two in the sequential proceedings, the ALJ determines if the claimant has a "severe" impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it "significantly limits your ability to do basic work activities." 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521. Such an impairment must last, or be expected to last, twelve months. 20 C.F.R. § 404.1509.

The ALJ's analysis at steps four and five must consider all of a claimant's impairments, both severe and non-severe. 20 C.F.R. § 404.1545(a)(2). Because the ALJ proceeded beyond step two

in the sequential analysis, the court will consider the effect of the ALJ's alleged error in reviewing the ALJ's subsequent findings. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding an ALJ's step two omission harmless when the ALJ proceeded beyond step two in the sequential analysis). These findings are reviewed below.

## III.   Medical Evidence

Gardner challenges the ALJ's rejection of work-related limitations assessed by treating psychiatrist Dr. Erickson, and examining psychiatrist Dr. Essink. Pl.'s Opening Br. 18, 20.

### A.    Standards

As noted above, an ALJ generally must accord greater weight to a treating physician's opinion than an examining physician's opinion and, in turn, accord greater weight to an examining physician's opinion than to a reviewing physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must give specific, legitimate reasons supported by substantial evidence for rejecting a controverted opinion from a treating or examining physician. *Id.* If the opinion is not contradicted by another physician, then the ALJ may reject it only for clear and convincing reasons. *Id.*

Treating psychiatrist Dr. Erickson found Gardner "markedly" limited in concentration, persistence, and pace. Tr. 468. Examining psychiatrist Dr. Essink found Gardner "below average" and "severely below average" in concentration, persistence, and pace, but did not assign "marked" limitations. Tr. 515. The ALJ also specifically noted that Dr. Erickson's notes regarding Gardner's alcohol use contrasted with those of other medical providers. Tr. 18.

Because Dr. Erickson's and Dr. Essink's findings regarding Gardner's work-related

restrictions contradict each other, the ALJ must provide "specific and legitimate" reasons for rejecting their opinions. "Specific and legitimate" reasons must be based upon "substantial evidence," which is "more than a scintilla, but less than a preponderance." *Lester*, 81 F.3d at 831 (citing *Andrews*, 53 F.3d at 1039). The ALJ may rely upon a non-examining physician's opinion in this instance, but only where that opinion is supported by substantial evidence of record. *Id.*

### B.    Discussion

#### a.    Treating Psychiatrist Dr. Erickson

As noted, Dr. Erickson treated Gardner between July 1997 and December 12, 2001. Tr. 470-510. Gardner contends that the ALJ improperly rejected treating psychiatrist Dr. Erickson's opinion that Gardner was "markedly" limited in concentration, persistence, social functioning, and ability to withstand stress. Pl.'s Opening Br. 18. Gardner specifically asserts that his attention-deficit hyperactivity disorder ("ADHD") impairment limits his ability to focus, concentrate, "attend," and remember. Pl.'s Opening Br. 20. Gardner provides no citation to legal authority or the record for this assertion. Gardner also does not explain how these limitations are inconsistent with the ALJ's finding that Gardner is limited to work which is "simple, repetitive, and routine." Tr. 18.

#### i.    Dr. Erickson's Treatment Notes

Dr. Erickson performed a psychiatric intake evaluation on July 14, 1997, and diagnosed "probable" ADHD and post-traumatic stress disorder "from childhood." Tr. 506. Dr. Erickson saw Gardner two additional times in July and August 1997. Tr. 504. Dr. Erickson next saw Gardner on January 29, 1999. Tr. 502-03. At this time Dr. Erickson diagnosed Gardner with "adjustment reaction, severe," and ADHD. Tr. 503. Dr. Erickson subsequently saw Gardner for therapy and

medication management, and continued to treat Gardner at approximately one-month intervals until December 12, 2001.  Tr. 494-501, 470-490.   Finally, Dr. Erickson wrote a letter addressed to Disability Determination Services[2] on June 2, 2003, addressing Gardner's present claim for social security disability insurance benefits.  Tr. 460.  Here Dr. Erickson stated that Gardner had no physical limitations but experienced "marked" limitations in understanding and memory, concentration, persistence, and pace, social interaction, and adaptation. *Id.*

### ii.    Gardner's Alcohol Use and Dr. Erickson's Opinion

As discussed above, the ALJ's evaluation of Dr. Erickson's treatment notes and opinion cited Dr. Erickson's omission regarding Gardner's alcohol abuse.  Tr. 18-19.  The ALJ first noted that Gardner did not "disclose the actual amount of alcohol he consumed, the accurate frequency of his drinking, or any other relevant details to Dr. Erickson."  Tr. 18.  The ALJ also noted that other treating physicians diagnosed alcohol abuse during an overlapping period.  *Id.*

The ALJ's finding that Dr. Erickson's opinion rests in part upon Gardner's inconsistent reporting is based upon the record, as noted above.  The ALJ may reject portions of physician opinions predicated upon testimony of a claimant deemed not credible.  *Tomassetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Tonapetyan*, 242 F.3d at 1149; *but see Ryan v. Astrue*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (holding that physician reports supported by independent clinical evaluations may not be rejected by reference to claimant's testimony).  The ALJ's citation to Gardner's inconsistent statements regarding his alcohol use in relation to Dr. Erickson's opinion

---

[2]DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 404.1503.

should therefore be affirmed.

      ii.    **Work-Related    Attention-Deficit    Hyperactivity    Disorder Limitations**

The court must now determine whether the ALJ properly rejected Dr. Erickson's work-related ADHD limitations. A review of Dr. Erickson's record regarding Gardner's ADHD shows that Dr. Erickson diagnosed "probable" ADHD in January 1999, and assigned no workplace limitations at this time. Tr. 506. In February 1999 Dr. Erickson assessed ADHD and noted Gardner's reports that his concentration was returning (tr. 501), and of feeling "scattered" and "forgetful at times." Tr. 500. Dr. Erickson cited an ADHD diagnosis March, May, and June 1999, without reported or assessed limitations. Tr. 495-98. Dr. Erickson's treatment notes do not mention ADHD in June 1999. Tr. 494. In July 1999 Dr. Erickson noted ADHD and cited Gardner's report that he "needs to focus on one task at a time, or else [he] loses important details." Tr. 490. Dr. Erickson also stated that Gardner reported he cannot multi-task. Tr. 490.

Dr. Erickson continued to assess ADHD in September and October 1999, without limitations. Tr. 486, 488, 489. In December 1999 Dr. Erickson assessed ADHD and noted Gardner's report that his reading comprehension was a "bit down." Tr. 485. Dr. Erickson continued to assess ADHD in February and August 2000, without limitations. Tr. 481, 484.

In summary, Dr. Erickson's treatment notes show no ongoing clinically demonstrated limitations stemming from Gardner's ADHD. Dr. Erickson instead noted Gardner's reports of concentration lapse, and made no independent clinical observations of work-related limitations.

On May 10, 2001, Dr. Erickson wrote a letter to DDS stating that Gardner's ADHD makes Gardner "error-prone" in reading, listening, understanding, and retaining information, and in

performing tasks. Tr. 474. Dr. Erickson stated that this limitation continued "even with treatment." *Id.* Finally, Dr. Erickson assessed "marked" limitations in Gardner's ability to sustain concentration and persistence. *Id.* In June 2001, Dr. Erickson again assessed ADHD and noted Gardner's reports that he experienced anxiety with multi-tasking, must limit his activities to single steps, and could complete tasks if he does them slowly. Tr. 472.

The ALJ rejected Dr. Erickson's limitations primarily because of the discrepancy regarding Gardner's alcohol use, discussed above. Tr. 18. As discussed, the ALJ also noted that Gardner did not disclose his alcohol use to Dr. Erickson, and found this omission relevant regarding Gardner's ability to function. Tr. 18. This finding applies to Gardner's reported limitations regarding his ADHD and should be affirmed.

The ALJ also rejected Dr. Erickson's opinion because Dr. Erickson did not treat Gardner between December 2001 and Gardner's December 2004 date last insured. Tr. 19. The ALJ may reject opinions unsupported by clinical notes and findings. *Bayliss*, 427 F.3d at 1216. Here, Dr. Erickson's treatment notes do not support his opinion after December 2001.

For these reasons, Gardner fails to establish that Dr. Erickson's limitations relating to his ADHD are properly supported. The ALJ's rejection of Dr. Erickson's "marked" limitations should be sustained.

b.    **Examining Psychiatrist Dr. Essink**

Gardner contends that the ALJ "ignored the bulk" of examining psychiatrist Dr. Essink's opinion. Pl.'s Opening Br. 20. Gardner cites Dr. Essink's GAF assessment, but does not identify which of Dr. Essink's diagnoses or work-related restrictions the ALJ ignored. *Id.*

### i.    Dr. Essink's Treatment Notes

Dr. Essink evaluated Gardner on June 19, 2003.  Tr. 511-515.  Dr. Essink assessed major depressive disorder, "single episode, severe without psychotic features, in partial remission," chronic PTSD, panic disorder with agoraphobia, ADHD, alcohol abuse, and a Global Assessment of Functioning ("GAF")[3] score of forty-five. Tr. 515. Dr. Essink based his assessment upon Gardner's report and a clinical examination.  Dr. Essink concluded that Gardner has a "guarded" prognosis, severely below average ability to focus and concentrate, below average pace and persistence, and an average ability to follow simple commands. *Id.* Dr. Essink also concluded that Gardner has a below average ability to follow complex instructions, interact with others, and tolerate work-related stress. *Id.*

### ii.    Dr. Essink's Work-Related Restrictions

The ALJ noted Dr. Essink's June 19, 2003, report. Tr. 19. The ALJ primarily noted the contrast between Gardner's activities outside his home and Gardner's report of agoraphobic symptoms to Dr. Essink. *Id.* The ALJ may reject a physician's opinion by citing "specific examples" of the claimant's activities that contradict the physician's proposed limitations. *Morgan v. Comm'r*, 169 F.3d 595, 601 (9th Cir. 1999).

Gardner also asserts that the ALJ's RFC failed to account for Dr. Essink's remaining limitations. Pl.'s Opening Br. 20. Gardner fails to explain how the ALJ's restriction to work that is "simple, repetitive, and routine in a defined work structure," and removed from a public setting

---

[3] The GAF scale is used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100. *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. Text Revision 2000) 34-35.

(tr. 18), is inconsistent with Dr. Essink's conclusion that Gardner's ability to focus and concentrate is "severely below average." Tr. 515. This court finds Dr. Essink's restrictions consistent with the ALJ's RFC assessment.

Gardner instead asserts that Dr. Essink's GAF assessment establishes that he cannot perform such work. Pl.'s Reply Br. 4. Here Gardner correctly notes that a GAF score does not determine disability, but asserts that "taken in context with the evidence as whole," a GAF score of forty-five supports a finding of disability. *Id.* Gardner's indicated citations do not address GAF scores. Instead, Gardner argues that his GAF score is significant and probative. *Id.*

The Commissioner cannot ignore significant, probative evidence. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Dr. Essink's GAF assessment is one element of Dr. Essink's conclusion; like the rest of Dr. Essink's opinion this assessment is based upon Gardner's reporting. The ALJ gave appropriate reasons for rejecting that opinion. Therefore, the ALJ's failure to specifically cite the GAF score is insignificant.

### C.    Conclusion: Medical Source Statements

In summary, the ALJ appropriately reviewed the opinions of Drs. Erickson and Essink. Gardner does not show reversible error in the ALJ's evaluation of the medical source statements. Furthermore, the ALJ's RFC assessment accounts for properly supported limitations submitted by Drs. Erickson and Essink.

## IV.    Lay Testimony

Gardner asserts that the ALJ rejected the statements of Gardner's ex-wife by "employ[ing] the same faulty reasoning that [he] used to reject Gardner's testimony, and for the same reasons, he

erred." Pl.'s Opening Br. 21.  Gardner does not identify his ex-wife by name (important because Gardner has two ex-wives), offers no further explanation of his argument, does not identify the ALJ's alleged error, and does not identify the improperly omitted testimony or explain to the court how it supports a disability finding. *Id.*

The ALJ addressed two third-party statement submitted by "the claimant's wife." Tr. 20 (citing ex. 12E and 19E). The record contains two third-party witness statements, respectively labeled exhibit 12E and 19E. Tr. 179-90, 221-34. The first was submitted by Patricia Hurford on May 20, 2002. Tr. 179-90. The second was submitted by Patricia Gardner on March 21, 2004. Tr. 234. Both identify themselves as Gardner's wife. Tr. 179, 221. The court therefore considers both statements.

## A.    Standards: Lay Witness Testimony

The ALJ has a duty to consider lay witness testimony.    20 C.F.R. §§ 404.1513(d), 404.1545(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment, and he must give germane reasons for rejecting lay testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Failure to discuss lay testimony is never harmless, unless the reviewing court can confidently conclude that "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r*, 454 F.3d 1050, 1056 (9th Cir. 2006).

///

**B.**    **Lay Testimony**

    **a.**    **May 20, 2002, Statement of Patricia Hurford**

       Patricia Hurford submitted a third-party witness statement on May 20, 2002. Tr. 179-190. Hurford identified herself as Gardner's wife at this time. Tr. 190. Hurford stated that Gardner gets along well with friends and family members, conducts normal conversations, and does not take offense easily. Tr. 179-81. Hurford stated that Gardner participates in social activities, plays golf, eats out, and attends clubs on occasion. Tr. 180. Hurford wrote that Gardner socializes, but can no longer be in situations "involving tension or stress, especially in crowds or large groups." Tr. 181. Hurford also stated that Gardner has difficulty relating to store clerks and past co-workers, watches four hours of television per day, and drives. Tr. 182. Hurford stated that Gardner walks one-half mile per week, and plays golf three to four times a week. Tr. 183-84. Hurford stated that Gardner naps one to two hours per day, and can perform household chores, but does not perform household chores because she does them. Tr. 185.

    **b.**    **March 21, 2004, Statement of Patricia Gardner**

       Patricia Gardner submitted a third-party report form on March 21, 2004. Tr. 221-34. Patricia Gardner also identified herself as Gardner's wife. Tr. 221. Patricia Gardner stated that Gardner walks, watches television, and golfs "sometimes." *Id.* She stated that Gardner has "little or no appetite," and can no longer "work, read, hold concentration, keep appointments regularly, participate in large group activities [or] maintain control of his temper" Tr. 222. She stated, again, that Gardner can no longer work and cannot "socialize or do sports when there is any chance of cutting himself." Tr. 223. Patricia Gardner subsequently stated that Gardner cannot prepare food

when there is a "chance of cutting himself;" this apparently refers to Gardner's hepatitis-C status. Tr. 223-224. She stated that Gardner cannot multi-task or perform activities requiring concentration, and that Gardner plays golf with friends "two or three times weekly." Tr. 227. Patricia Gardner confirmed limitations in Gardner's understanding, memory, hearing, concentration, talking, and ability to follow instructions, complete tasks, and get along with others. Tr. 229. Finally, Patricia Gardner stated that Gardner "does not seem to understand or retain conversations," forgets instructions, and does not retain what he reads. *Id.*

## C.    Analysis: Lay Testimony

Gardner makes no identifiable argument regarding either lay witness report. Pl.'s Opening Br. 21. Gardner instead refers the court to his submissions regarding his own credibility, which asserts alternate explanations for his alcohol use, activities of daily living, and medical record. *Id.*

The ALJ did not cite Gardner's testimony in rejecting limitations described in the lay witness testimony. Tr. 20. Instead, the ALJ "awarded little evidentiary weight" to the lay witness statements because the limitations described by both third-party reports were not reflected by the record. *Id.* The ALJ particularly noted that the medical record did not reflect weight loss, other than Gardner's isolated effort to lose weight, and that the record reflects Gardner's social activities involving large groups of people. Tr. 20. The ALJ may reject limitations described by lay witness testimony that are unsupported by the medical record. *Lewis*, 503 F.3d at 512.

The ALJ also noted that Gardner's RFC assessment reflects limitations in concentration described by the third-party reports. Tr. 20. As discussed above, the ALJ restricted Gardner to simple, routine, repetitive and defined work outside of a public a setting. Tr. 18. Hurford stated that

the Gardner does not function well in settings that he finds stressful, or in crowds and large groups. Tr. 181. Because the ALJ restricted Gardner to simple, repetitive, and "defined work structure," and from contact with the public, this testimony does not establish further limitations.

For all of these reasons, Gardner fails to show that the ALJ inappropriately rejected the lay witness testimony.

## V.    The ALJ's Step Five Findings

Finally, Gardner contends that the ALJ made step five findings unsupported by substantial evidence. Pl.'s Opening Br. 21.

As noted, at step five, the ALJ determines if the claimant may perform work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Yuckert*, 482 U.S. at 142; *Tackett*, 180 F.3d at 1099. Inability to perform such work results in a finding of disability. *Id.* If the process reaches this fifth step, the burden shifts to the Commissioner to show that the claimant may perform work existing in the national economy. *Id.* The Commissioner may meet this burden by drawing upon the testimony of a vocational expert. *Id.* at 1101. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1566.

The ALJ solicited testimony from a vocational expert (tr. 681-84), and based his step five findings upon the vocational expert's testimony. Tr. 22. The ALJ asked the vocational expert to consider a claimant with the limitations described in Gardner's RFC. Tr. 682. The vocational expert stated that a person with Gardner's RFC could perform work as an assembly production worker, laundry worker, and industrial cleaner or janitor. Tr. 683.

The ALJ's questions to the vocational expert must include properly supported limitations.

*Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir. 2001). The ALJ need not include limitations unsupported by the record. *Id.* at 1164-65. Gardner fails to show error in the ALJ's RFC assessment, discussed above. Therefore, the ALJ's questions to the vocational expert were properly supported. For this reason, the ALJ's step five finding that Gardner may perform work existing in the national economy is affirmed.

## CONCLUSION AND RECOMMENDATION

Gardner fails to establish reversible error in the ALJ's analysis of the relevant testimony, his RFC, and the ALJ's step five findings. This court finds that the Commissioner's decision that Gardner did not suffer from a disability and is not entitled to benefits under Title II of the Social Security Act is based upon correct legal standards and supported by substantial evidence, and recommends that the ALJ's ruling be AFFIRMED.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than May 18, 2009. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

///

///

///

24 - FINDINGS AND RECOMMENDATION

IT IS SO ORDERED.

Dated this 4th day of May, 2009.

JOHN V. ACOSTA
United States Magistrate Judge